NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

October 30, 2020

Maritza Rodriguez, Esq.
Rodriguez Law Firm LLC
744 Broad Street, Suite 1600
Newark, NJ 07102
*Attorney for Petitioner J.C.C.*

Neal Berger, Esq.
354 Eisenhower Parkway, Suite 2500
Livingston, NJ 07039
*Attorney for Respondent N.L.C.*

### LETTER OPINION FILED WITH THE CLERK OF THE COURT

  Re: *J.C.C. v. L.C.*,
     **Civil Action No. 19-21889 (SDW) (LDW)**

Counsel:

  Petitioner J.C.C ("Petitioner") brings this proceeding ("Petition") against Respondent N.L.C. ("Respondent") under the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* (D.E. 1, 7.) Petitioner alleges that Respondent wrongfully retained their two minor daughters in the United States, beginning on January 21, 2019, and requests that they be returned to El Salvador.[1] This Court assumes the parties are familiar with the factual issues in this matter and references only those facts relevant to, and necessary for, the resolution of the Petition. For the reasons stated herein, the Petition is **GRANTED**.

### LEGAL STANDARD

  The Hague Convention was enacted "to ensure the prompt return of children to the State of their habitual residence when they have been wrongfully removed" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other

---

[1] Petitioner initially moved for an Order to Show Cause for the children's return on December 23, 2019. (D.E. 1.) Following unsuccessful settlement discussions, and after reviewing the parties' filings in this matter, this Court held an evidentiary hearing on October 20, 2020.

Contracting States." Hague Convention, Preamble, Art. 1. "Any person seeking the return of a child in the United States may commence a civil action under the Hague Convention by filing a petition in a court of the jurisdiction in which the child is located." *Benitez v. Hernandez*, Civ. No. 17-917, 2017 WL 1404317, at *2 (citing 42 U.S.C. § 11603(b)). Pursuant to the narrow focus of the Hague Convention and the ICARA, this Court is not empowered to make custody determinations nor to judge who is the more fit parent. *See id.* at *1. Rather, this Court is limited to "restor[ing] the status quo where there has been a wrongful removal, and permit[ting] any rulings on divorce and custody to be made in the proper jurisdiction." *Id.*

"[T]o state a *prima facie* case in a proceeding under the Hague Convention for the return of a child wrongfully removed to or retained in another State, the petitioner must establish by a preponderance of the evidence that: (1) the child was habitually resident in one State and was removed to a different State; (2) the removal was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of removal." *Id.* Although the Hague Convention does not define "habitual residence," the Third Circuit defines the term to mean the place where the child "has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective." *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995). A "determination of whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there." *Id.*

"If the court finds wrongful removal or retention, the burden shifts to the respondent to prove an affirmative defense to the return of the child to the country of habitual residence" under Article 13 of the Hague Convention. *Baxter v. Baxter*, 423 F.3d 363, 368 (3d Cir. 2005). "The respondent must prove the defense of consent or acquiescence to the removal or retention by a preponderance of the evidence, or the defense of a grave risk of harm by clear and convincing evidence." *Id.* (citing 42 U.S.C. § 11603(e)(2)). "The affirmative defenses are narrowly construed," and the finding of an Article 13 exception "does not automatically preclude an order of return." *Id.* (citations omitted).

**DISCUSSION**

A.

Petitioner is a citizen and resident of El Salvador. (Tr. at 35.)[2] Respondent is a citizen of El Salvador and has been a resident of the United States since she moved from El Salvador in 2017. (*See* Tr. at 126–27.) Together, they have two daughters, I.M.C., a 15-year-old citizen of the United States, and V.I.C., a 9-year-old citizen of El Salvador (the "Children"). (Tr. at 36.)[3] Following their divorce in December 2016 and pursuant to the Judgment of Divorce entered in Family Court, the parties agreed that Petitioner would have physical custody of the Children and

---

[2] Citations to "R. Ex." refer to Respondent's exhibits entered into evidence during this Court's October 20, 2020 evidentiary hearing. Citations to "P. Ex." refer to Petitioner's exhibits entered into evidence during that hearing. Citations to "Tr." refer to the hearing transcript. This Letter Opinion also cites to Respondent's Closing Trial Brief, (D.E. 50), Petitioner's Closing Trial Brief, (D.E. 51), and the record citations contained therein.

[3] I.M.C. was born while Respondent was on vacation in the United States in 2004. (*See* Tr. at 37.)

that Respondent would pay child support and have visitation rights. (P. Ex. B; *see* Tr. at 10–13, 25–28.)[4] Respondent moved to the United States about six months after the divorce. (Tr. at 111.)

On October 22, 2018, Petitioner signed a notarized travel authorization for the Children to visit Respondent during their break at the end of the school year. (P. Ex. F (travel authorization for "temporary" and "touristic purposes"); *see* Tr. at 40.) Respondent paid for the Children's plane tickets—a roundtrip departing El Salvador on October 31, 2018 and returning January 21, 2019. (P. Ex. E.)[5] While the Children were abroad, on November 23, 2018, Petitioner paid their school enrollment fees in anticipation that they would start the new school year in El Salvador in January. (Tr. at 40–41.) However, in early January 2019, Respondent called Petitioner to inform him that she would not be returning the Children. (Tr. at 48–49.) He immediately flew to the United States to convince Respondent to return the Children on January 21st, as agreed. (*Id.*) He was unsuccessful and, on March 5, 2019, he filed a petition under the Hague Convention with the Central Authority of El Salvador for the return of the Children. (P. Ex. A.) He also continued to call, email, and visit Respondent in an attempt to negotiate the Children's return. (*See* P. Ex. W, X, Z; Tr. at 50–55.) Petitioner filed the instant suit in this Court on December 23, 2019. (D.E. 1.)

Applying the Third Circuit's definition of habitual residence to the facts, this Court is satisfied that El Salvador was the Children's habitual residence prior to their retention here in the United States by Respondent. Prior to the retention, the Children had lived in El Salvador for the entirety of their lives and had booked flights to return to El Salvador in time for the new school year for which they were enrolled. (*See* P. Ex. E.) Under the terms of the legally binding Judgment of Divorce, which Respondent agreed to, the Children were to live with Petitioner, and under the terms of the notarized Travel Authorization, the Children's visit to the United States was meant to be "temporary." (P. Ex. B, F.) In sum, Petitioner has shown by a preponderance of the evidence that both he and Respondent intended for El Salvador to be the Children's permanent residence prior to their retention in the United States. Respondent's decision to retain the Children past January 21, 2019, was unilateral, as evidenced by Petitioner's continuous attempts to exercise his parental rights at the time of retention and since then. (*See* P. Ex. W, X, Z; Tr. at 48–55.) Petitioner has therefore established a *prima facie* case under the Hague Convention.

B.

As an affirmative defense, Respondent argues that there is a "grave risk of harm" to the Children if they are returned to El Salvador because Petitioner has a history of physically abusing Respondent and the Children. (D.E. 50 at 1–3.) At the October 20, 2020, evidentiary hearing, Respondent testified regarding instances in which Petitioner abused her, including (1) in Florida in 2004, when he punched her in the stomach while she was pregnant; (2) in El Salvador in 2011, when her pulled her by the shirt in front of her sister's friends; (3) in El Salvador in 2012, when he pulled her by the arm and bruised it the day before her sister's wedding; (4) in El Salvador in

---

[4] Under the terms of the Judgment of Divorce, the parties shared "parental authority," which provided Respondent with "an equal say" over some major decisions regarding the Children, but not decisions such as schooling and medical treatment. (*See* Tr. at 25–30.)

[5] The flights were purchased separately—Respondent reimbursed Petitioner for his purchase of the departure tickets and she bought the return tickets herself. (Tr. at 46–47, 128.)

2014, when he punched her in the eye; and (5) in El Salvador in 2016, when he hit her in front of the Children. (*See* Tr. at 105–08.) In support of these allegations, Respondent submitted an undated self-photograph purportedly showing the black eye she received from the 2014 incident. (R. Ex. RA-1.) She also testified that her psychologist diagnosed her with post-traumatic stress disorder prior to the divorce, as a result of Petitioner's abuse. (Tr. at 109–11.)

Respondent further testified that, after she moved to the United States, she discovered that Petitioner was abusing their daughters, and testified regarding incidents in which Petitioner (1) struck V.I.C. in the face, causing her to bruise and miss school; (2) struck I.M.C. in the shoulder, causing her to bruise; and (3) kicked I.M.C. in front of his mother and sisters, who did not intervene. (Tr. 112–14.) In support of these allegations, Respondent submitted, respectively, (1) an undated screenshot from a video call purporting to show V.I.C.'s face bruise; (2) an undated photograph showing an unidentified and bruised shoulder; and (3) a July 31, 2018, screenshot of a Facebook message allegedly sent by I.M.C. asking a friend to inform a family member that her father beat her. (R. Ex. RA-2, RA-4, RA-5.)

However, Respondent's allegations of abuse are undercut by her own testimony that she agreed to Petitioner's primary physical custody of the Children after the parties divorced and sole physical custody after she moved to the United States. (Tr. at 125–27.) The allegations are also contradicted by her testimony that she allowed Petitioner to spend extended time alone with the Children after she retained them, including the following instances: (1) in April 2019, the Children slept at Petitioner's hotel when he flew in to celebrate V.I.C.'s birthday with the family and with V.I.C.'s class; (2) in June 2019, the Children stayed with Petitioner at his aunt's house when he flew in for I.M.C.'s graduation; (3) in August 2019, I.M.C. flew alone to El Salvador and stayed with Petitioner for a month; (4) in October 2019, I..M.C. flew to Mexico City alone to attend a concert with Petitioner; (5) in November 2019, the Children stayed at Petitioner's hotel when he flew in for I.M.C.'s birthday. (Tr. at 129–32; *see* Tr. at 54–59.) Furthermore, on January 27, 2020, following Petitioner's filing of the instant suit, Respondent filed a lawsuit in El Salvador Family Court to modify the terms of the Judgment of Divorce and obtain sole custody of the Children. (P. Ex. AB.) That lawsuit, which is pending, does not mention any allegations of abuse or neglect by Petitioner. (*Id.*; *see* Tr. 19–22.)

In view of the foregoing, this Court finds that Respondent has not established grave risk of harm by "clear and convincing evidence." *See Baxter,* 423 F.3d at 373. The Third Circuit has explained that the exception applies to "situations in which the child faces a real risk of being hurt, physically or psychologically, as a result of repatriation," but does not apply to situations where "repatriation might cause inconvenience or hardship, eliminate certain educational or economic opportunities, or not comport with the child's preferences." *Id.* (quotations and citations omitted). Here, Respondent has testified that the Children wish to stay in the United States, but she has not entered into evidence any police reports, contemporaneous medical reports,[6] or eyewitness

---

[6] This Court gives little weight to the testimony of I.M.C.'s licensed professional counselor, Patricia Townsend-Zales, who treated I.M.C. for nine sessions between January 15 and March 10, 2020. (*See* Tr. at 89.) The treatment began more than a year after Respondent claims she discovered the abuse and six days after Petitioner served Respondent in this suit. (*See* D.E. 6.) Although Ms. Townsend-Zales testified that I.M.C. discussed physical abuse by her father, she also testified that she did not verify I.M.C.'s statements because she treated the child in a clinical (and not forensic) capacity, *i.e.*, her "job was to stabilize [I.M.C.'s] moods." (Tr. at 99; *see* Tr. at 95–99.) She also testified that she was unaware of I.M.C.'s multiple unsupervised stays with Petitioner in 2019, including I.M.C.'s flights to Mexico and El

testimony[7] to corroborate the alleged physical abuse that occurred in Florida and El Salvador. Respondent cannot meet her evidentiary burden with testimony and undated photographs alone when the record shows that she allowed the Children to stay with Petitioner multiple times in the year following her alleged discovery of the Children's abuse, for unsupervised stretches of time ranging from overnight hotel stays in the U.S. to a month-long stay in El Salvador. Such actions are not consistent with her testimony that repatriation is a grave risk to her Children's safety.

C.

Although Respondent has not rebutted Petitioner's *prima facie* case,[8, 9] under Art. 13 of the Hague Convention, a court may also "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007) (citation and quotation omitted). However, this exception is to be "construed narrowly," and even when it is proven, "the court retains the discretion to order the return of the child if it would further the aim of the Convention which is to provide for the return of a wrongfully removed child." *Id.* (citations and quotation omitted).

This Court declined to hear testimony from the Children at the October 20, 2020 evidentiary hearing as it would have been redundant, needlessly harmful to the Children, and potentially influenced by Respondent. *See id.* (explaining that a "child's wishes should not be considered" if they are "the product of undue influence" (citations and quotations omitted)). With respect to V.I.C., specifically, a nine-year-old child is not of "appropriate age and maturity" to object to her return to her habitual residence. *Tahan v. Duquette*, 613 A.2d 486, 490 (N.J. Super. Ct. App. Div. 1992). With respect to I.M.C., this Court additionally considered that I.M.C. has been in Respondent's exclusive custody for the past year (and the majority of the past two years) and would thus naturally prefer to remain in the United States instead of moving once again and changing her social environment. *See Gatica v. Martinez*, Civ. No. 10-21750, 2011 WL 2110291, at *2 (S.D. Fla. May 25, 2011). But Respondent's continued retention of I.M.C. would frustrate the aim of the Hague Convention. This Court will therefore "exercise its discretion to order the child's return" to El Salvador despite the child's "preference to remain" in the United States.

---

Salvador. (Tr. at 99–100.) Thus, this Court will not rely on Ms. Townsend-Zales's testimony to corroborate Respondent's testimony.

[7] This Court declined to hear testimony from the Children for the reasons stated *infra* Discussion § C.

[8] To the extent Respondent argues that Petitioner consented or acquiesced to the Children staying with her, this Court finds that Petitioner neither consented nor acquiesced. Respondent retained the Children without Petitioner's consent after January 21, 2019, and Respondent has not identified any statement from Petitioner resembling a clear and formal renunciation of rights. *See Baxter*, 423 F.3d at 371 ("[T]he defense of acquiescence has been held to require an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time." (citation and quotation omitted)).

[9] To the extent Respondent argues that the Children are excepted from return under Art. 12 of the Hague Convention because they are "settled in [their] new environment," this Court notes that the Art. 12 exception does not apply where the petition was filed within one year of wrongful retention. *See Yang v. Tsui*, 416 F.3d 199, 203 n.4 (3d Cir. 2005). That is the case here, where the Children were wrongfully retained on January 21, 2019, and the Petition was filed in this Court on December 23, 2019. (D.E. 1.)

*Gonzalez Locicero v. Nazor Lurashi*, 321 F. Supp. 2d 295, 298 (D.P.R. 2004); *see Tsai-Yi Yang*, 499 F.3d at 278.

### **CONCLUSION**

      For the reasons set forth above, the Petition to return the minor Children to El Salvador is **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:        Clerk
cc:          Leda D. Wettre, U.S.M.J.
              Parties